ROUSH *v.* W. R. DUNCAN & SON ET AL.

[No. 14,745. Filed December 8, 1932. Rehearing denied February 23, 1933.]

*Samuel E. Cook,* for appellant.

*H. L. McCray, Edward J. Boleman, Burrell Wright,* and *Jacob S. White,* for appellees.

Curtis, C. J.—This was an application by the appellant for a review of an award of the Industrial Board of Indiana. The hearing member decided against the appellant, who then filed an application for a review by the

full Board. From the order of the latter the appellant has appealed.

It is thought that the issues can be best understood by setting forth the principal terms of the stipulation entered into by the parties before the Board. It is as follows: "That on December 13, 1928, the plaintiff sustained an injury to his right leg, while in the employ of said W. R. Duncan & Son as a carpenter, by an accident in falling from a scaffold and arising out of and in the course of said employment in the City of Huntington, Huntington County, Indiana.

"That the average weekly wages of said employee at the time of said injury exceeded $30.00 per week.

"That on December 28, 1928, said employer and employee made and entered into a written agreement as to compensation in which it was agreed that said employee should receive compensation at the rate of $16.50 per week during total disability not exceeding the period fixed by law beginning on December 21, 1928.

'That said agreement was duly executed by said parties and filed with said Industrial Board and was approved by it on January 10, 1929.

"That said employer made said payments for 57 weeks or until January 28, 1930.

"That on January 28, 1930, said employer and employee made and entered into a second agreement in writing in which it was agreed that said employee should receive as compensation for said injury at the rate of $16.50 per week for 200 weeks beginning on December 21, 1928, on account of the total loss of the use of the right leg and not exceeding five thousand dollars; that said agreement was executed by said parties and filed with said Board and duly approved by it on February 6, 1930, which is still in full force and effect.

"That afterwards, on January 28, 1930, said employer and employee made and entered into a third written

agreement in which it was agreed that on December 13, 1928, said employee had received personal injuries by an accident arising out of and in the course of his employment while in the service of said employer; that by the agreement approved by said Board the weekly compensation liability of said employer to said employee was fixed at $16.50 per week for 200 weeks; that said employer had made said weekly payments in the manner and at the times fixed in said agreement for 57 weeks; that said employee and employer have agreed that 143 weeks of the remainder of said weekly compensation liability may be redeemed by the cash payment of said employer to said employee of a lump sum in such an amount as may be fixed by said Board; that it will be to the best interest of said injured employee that so much of such weekly compensation liability be redeemed by the cash payment of a lump sum for the following reasons: 'The injured employee has a condition in his right leg which has a strong possibility of being materially benefited by a further operation necessitating prolonged confinement in hospital and home and desires lump sum settlement so that he may meet this expense as well as provide for his family during this interval.'

"That said employee and employer prayed in said agreement that the Board approve it and to fix the amount of the lump sum by which 143 weeks of said compensation liability may be redeemed by a cash payment.

"That said agreement was duly executed by said parties and filed with and approved by said Board on February 6, 1930; that in approving said agreement said Board fixed and provided the amount of said 143 weeks of weekly compensation liability may be redeemed by a cash payment in a lump sum of $2,265.50 which was paid by said employer to the plaintiff.

"That afterwards, on February 10, 1930, the plaintiff executed a receipt to said employer showing he had re-

ceived said $2,265.50 making in all, with the weekly payments already received by said employee, the total sum of $3,239.00.

"That said receipt was intended by said parties to correspond with said last described agreement and to cover the statutory period of 200 weeks for the total loss of the use of said right leg, but by the mutual mistake of the scrivener who prepared said receipt and of said parties said scrivener wrote it therein: '100 weeks for total loss of right leg.'

"That afterwards, on February 1, 1932, the plaintiff made a demand of said employer that it resume said weekly payments for disability for work as provided in said original award and to continue the same until said balance of $5,000.00 is paid; that said defendants have refused to resume said payments and said parties have disagreed as to the resumption and continuance of said payments and compensation."

The first paragraph of the appellant's application for review contained the following allegations: "That the disability of said employee on account of said injury has recurred since the date of said award.

"That the disability of said employee on account of said injury has increased since the date of said award.

"That the disability of said employee on account of said injury did not end on January 28, 1930, and never has ended.

"That said injury has resulted in a permament partial impairment." The appellant also filed a second paragraph in his application for review, much of which is covered by the stipulation heretofore set forth. In said paragraph it is also alleged that a further operation, as mentioned in the stipulation, was performed in an unsuccessful attempt to reduce the fracture and that the appellee refused to have said operation performed and refused to pay for the same and that the appellant was

compelled to pay out over $600.00 for said operation. It is also alleged: That the appellant understood that said 57 weeks were paid on his disability and that he should receive 200 weeks for the loss of the use of his leg; that he had no attorney at the time of said lump sum agreement, and "had no knowledge of the provisions of the compensation law in relation to the separate liability of said employer for loss for disability to perform work and loss for the use of said limb;" that "on account of the action of said defendant (appellee) in so applying said payments, they did not pay him for 200 weeks but only paid him for 143 weeks and for that reason they have not paid him anything on the compensation for the 500 weeks for said disability to perform work," and that under said first agreement and award the appellant was and now is entitled to compensation during the continuance of total disability to perform work as a carpenter or other similar work, not exceeding 500 weeks; that the injured limb is stiff and sore and that it pains and aches continually and that since said first award said limb has gradually grown worse and that he is totally disabled from performing any work as a carpenter or any other similar work or any kind of work at all. The prayer of this paragraph is as follows: "Wherefore, he asks the Board to enter an order herein requiring said defendants to resume to make said weekly payments for total disability for work and to continue the same until the balance of $5,000.00, namely $1,761.00 is paid and that said defendants be ordered to pay the costs of said operation and for all other proper relief in the premises." The appellees filed no special answer to either paragraph of the application.

The finding and order of the full Industrial Board is as follows: "The full Industrial Board of Indiana having heard the argument of counsel and having reviewed the evidence and being thereby duly advised in the premises, finds that on February 6, 1930, the Industrial Board of

Indiana approved a compensation agreement executed by the plaintiff and defendant, under date of January 28, 1930, by the terms of which the plaintiff should receive compensation at the rate of $16.50 per week for a period of 200 weeks, beginning on December 21, 1928, on account of the loss of plaintiff's right leg resulting from an accidental injury received by him on December 13, 1928; that the plaintiff has been paid the compensation as provided in said agreement.

"That on February 16, 1932, the plaintiff filed with the Industrial Board his application in two paragraphs for review of original award on account of a change of conditions, alleging that the plaintiff's disability on account of his said injury has recurred and increased since the date of said approved agreement; that the disability of the plaintiff on account of his injury did not end on January 28, 1930, and never has ended; that plaintiff's injury has resulted in a permanent partial impairment.

"The Board finds for the defendant on plaintiffs first and second paragraph of application, that plaintiff's disability has neither recurred or increased as alleged in his said application, and that his said total disability resulting from said injury did end as of January 28, 1930, and that plaintiff's injury resulted in a permanent partial impairment to the extent of the loss of his right leg, for which impairment he has been fully compensated.

"It is, therefore, considered and ordered by the full Industrial Board of Indiana that the plaintiff take nothing by his application herein."

The appellant assigned error of the full Board in twelve particulars, but in his brief under points and authorities he admits that the first error assigned, to-wit: "that the award by the full board is contrary to law" is a sufficient assignment of error to present all questions raised.

Under his points and authorities, the appellant states

many more or less abstract propositions of law with authorities to support them but in most instances with no application made to the case at bar. With many of these propositions we agree, and, in fact, the appellees likewise agree in the main that they are correct abstract statements of the law. We do not deem it necessary herein to take up all of these propositions separately and discuss them and this conclusion is reached particularly in view of the rule that where an application of the point to the case is not made, that the point is waived. The main question in the case is whether or not the appellee was entitled as it did to take credit for the 57 weeks' compensation paid to the appellant for temporary total disability, in making the second agreement to pay him a total of 200 weeks for the permanent partial impairment due to the total loss of his leg.

After hearing the evidence the full Board found that the total disability of the appellant resulting from the injury ended as of January 28, 1930, and that his injury resulted in a permanent partial impairment to the extent of the loss of his right leg for which impairment he has been fully compensated.

When, as in this case, the Industrial Board has reached a conclusion as to the ultimate facts which have or have not been established, and has stated such conclusion in its finding of facts, this court must accept the facts so found as true, unless the evidence is of such a conclusive character as to force a contrary conclusion. In order to reach a contrary conclusion we, however, will not weigh the evidence nor will we disregard the reasonable inferences which the Industrial Board may have drawn from the facts which the evidence tends to establish. See *Swing* v. *Kokomo Steel, etc., Company* (1921), 75 Ind. App. 124, 125 N. E. 471, and cases cited therein. When these rules are applied to the evidence in the instant case we cannot say that it is of

such a conclusive character as to require us to hold that the Board erred in its finding that appellant's total disability had ceased and that permanent partial impairment had ensued. If the finding of the Board is not disturbed, then the case, in many of its features, falls within the rules of law announced recently by this Court in the case of *Inman* v. *Carl Furst Company* (1930), 92 Ind. App. 17, 174 N. E. 96.

When the injury has reached a permanent and quiescent state, as the finding in this case discloses, and such permanent injury comes within the schedule of specific injuries enumerated in section 31 of the Workmen's Compensation Law of Indiana, the fact that the employee is unable, on account of his injury, to resume work of the same kind or of the same character as the work in which he was engaged at the time he received the injury, is not such a fact as would of itself defeat a finding that total disability had ended and that permanent partial impairment had ensued. The distinctions between the words "disability" and "impairment" as used in the Workmen's Compensation Law, must be kept clearly in mind. By the former is meant an inability, either partial or complete, to work; the latter means a partial or complete loss of the function of a member of the body or of the body as a whole as covered by the Workmen's Compensation Law. See *Inman* v. *Carl Furst Company, supra; Northern Indiana Power Company* v. *Hawkins* (1925), 82 Ind. App. 552, 146 N. E. 879. There is, therefore, no legal inconsistency in the finding of the Board that, within the meaning of the Workmen's Compensation Law, the appellant's total disability had ended as of January 28, 1930, and that his injury had resulted in a permanent partial impairment to the extent of the total loss of his right leg.

The Board further found that the appellant's disability has neither recurred nor increased as stated in his appli-

cation. This finding was also made by the Board after a consideration of the evidence, and, for the reasons heretofore stated, we see no reason for disturbing it.

It was also found by the Board that for the permanent partial impairment, in the total loss of his right leg, the appellant has been fully compensated. The evidence is without conflict that the money paid to the appellant for the 57 weeks of total disability was deducted from the money paid for the 200 weeks agreed upon between the parties for the said permanent partial impairment. If this deduction is warranted under the law then the finding that the appellant has been fully compensated is as to that item sustained by sufficient evidence, otherwise the order of the Board based thereon and the award must be reversed.

Section 31 of the Workmen's Compensation Law, among other things, provided as follows: "For injuries in the following schedule the employee shall receive in lieu of all the other compensation, on account of said injuries, a weekly compensation of fifty-five per cent of his average weekly wages for the periods stated for said injuries respectively, towit: . . . of the leg above the knee joint two hundred weeks. The total permanent loss of the use of a . . . leg . . . shall be considered as the equivalent of the loss by separation of the . . . leg . . . and the compensation shall be paid for the same period as for the loss thereof by separation." The evidence is without conflict that the appellant's total disability resulted from the same injury that caused his permanent partial impairment. Under the record, as presented to us in the instant case, we believe that the Board was correct in its finding that the appellant has been fully compensated. See Section 31, Indiana Workmen's Compensation Act, Acts 1929, p. 536; *Johnson* v. *Cole* (1928), 87 Ind. App. 678, 161 N. E. 700; *Inman* v. *Carl Furst Company, supra;*

*Martha Gilbert* v. *H. C. Bay Company* (1928), 87 Ind. App. 693, 161 N. E. 702; *Zeller* v. *Mesker* (1927), 85 Ind. App. 659, 155 N. E. 520; *Standard Cabinet Company* v. *Landgrave* (1921), 76 Ind. App. 593, 132 N. E. 661; *Denasoff* v. *Foundation Company et al.* (1927), 86 Ind. App. 272, 155 N. E. 521.

The appellant also argues that he was entitled to be repaid the amount of money he paid out for the said second unsuccessful operation which was performed in an attempt to reduce the fracture, but he has not shown any evidence that brings him within the law requiring the appellee to pay such expense. See section 25 of Indiana Workmen's Compensation Act, *supra.*

We believe the award of the full Board is not contrary to law. It is therefore affirmed.