UNION DRAWN STEEL COMPANY *v.* THOMPSON.

[No. 13,307. Filed February 15, 1929. Rehearing denied May 28, 1929.]

*William J. Whinery,* for appellant.
*Floyd Hoover* and *Arthur E. Letsinger,* for appellee.

ENLOE, C. J.—There is no dispute as to the facts in this case, and briefly, they may be stated as follows: On June 12, 1926, the appellee was in the employ of the appellant, and received an injury by accident arising out of and in the course of his employment. The parties entered into a compensation agreement, under the terms of which appellee was to receive compensation at the rate of $13.20 per week during temporary total disability, beginning June 19, 1926, and not exceeding, as to time, the period fixed by law. The appellant also paid the reasonable and necessary surgical, medical and hospital expenses. In August, 1926, appellee returned to his work with appellant and resumed his employment at the former wages. He also, at said time, executed and de-delivered a final settlement receipt, covering five and two-sevenths weeks, the period during which he was totally disabled. The said "compensation agreement" was duly approved by the Industrial Board, and said final receipt was filed with said board.

On December 9, 1927, appellee filed with the Industrial Board his application for the "adjustment of his claim for compensation," and on December 16, 1927, he filed

with said board his application for a review of the award on account of alleged "change of conditions."

After the filing of these applications, notice of the *time and place* of hearing thereon was given to the appellant. A hearing was had, and later, upon application, there was a review by the full Industrial Board. Upon this review, the full board found, *inter alia*, that on June 12, 1926, the appellee received a personal injury by accident arising out of and in the course of his employment; that his average weekly wage was in excess of $24; that the employer had actual knowledge of the accident and injury; that the parties entered into a compensation agreement which was approved by the Industrial Board; that the said agreement provided for payment of compensation during *total disability only*, and there was no provision therein for the payment of compensation on account of the loss of vision of plaintiff's eye; that appellee's injury, *originally and immediately*, resulted in the total and permanent loss of the vision of his left eye; that appellee received and receipted for five and two-sevenths weeks' compensation as being in full of compensation under said agreement; that on December 9, 1927, appellee filed an application herein for an award of compensation, alleging that his said injury had resulted in the permanent loss of the vision of his left eye; that on December 16, 1927, appellee also filed an application for an award of compensation on account of a change of conditions.

Upon the findings made, there was an award of compensation upon the application of December 9, 1927, for 150 weeks, with credit for what had theretofore been received, as for *permanent partial impairment*. From this award, this appeal is prosecuted, and the matters urged for reversal are those hereinafter considered.

Upon the said award being made, the appellant moved to strike out part of the said findings, and also

part of said award, which motion was overruled, and of this action complaint is made.

Counsel for appellant says that it had no notice of the filing of said application of December 9, 1927; that the filing of the application of December 16 was an abandonment of the said prior application and that the same should not, therefore, have been considered. We cannot concur in this contention. The application of December 16 did not purport to be an "amended application," and, in fact, was not such; it was an independent application for an award based upon a supposed "change in conditions," and was, as an application, in no way related to the application of December 9, and did not supersede the same. We know of no rule of law or practice that prohibits the filing of two such applications.

Appellant says it had no notice of the filing of said application of December 9, but the answer to this contention is that the statute (Acts 1915, ch. 106, §58, §9503 Burns 1926) requires the board to give notice of the *time and place* of the hearing only, and parties must take notice of papers on file in the case. If a party does not examine the record or search the files to see what is therein contained, he must count that as his misfortune. There was no error in overruling said motion.

The appellant next contends that, as the application upon which the award in this case was made was not filed within one year from the time total disability ceased—July, 1926—it was barred by the one year limitation mentioned in §45 of our compensation act; that the decision in the case of *In re Hogan* (1921), 75 Ind. App. 53, 129 N. E. 633, is controlling, and that this cause must be reversed. The testimony given upon the hearing in this case is amply sufficient to sustain the finding of the board that partial impair-

ment for which the appellee claimed compensation under his application filed December 9, 1927—the loss of the sight of his left eye—was the immediate result of the said accidental injury by him sustained, his being struck in the eye by the head of a nail which he was attempting to drive. In *Zeller* v. *Mesker* (1927), 85 Ind. App. 659, 155 N. E. 529, it was said: "It is obvious that the immediate results of an accident may be a 'total temporary disability' and a 'permanent impairment.' When, in such case, an application is made for an award of compensation for the resulting 'temporary total disability,' and compensation is awarded therefor, the matter of impairment, though existing, is not considered, and is not covered by the award. In such case, an original claim may be made under §24 for compensation for such 'impairment.' The same is true if the matter of 'temporary total disability' is so covered by an agreement between the employer and employee. Such an award or agreement for 'temporary total disability' only, by its terms, ceases to be effective when such disability ends. If the injury to the employee shall develop into a 'permanent impairment' for which the employee shall be entitled to compensation beyond the period of 'temporary total disability,' a claim therefor may be made under §45 of the said act, on account of 'change of condition.'" See, also, *Denasoff* v. *Foundation Company* (1927), 86 Ind. App. 272, 155 N. E. 521. As said above, it is obvious that an injury may result in an immediate temporary total disability, and also in an immediate permanent partial impairment, as it did in both the instant case and in the Denasoff case, *supra*, or it may result in an immediate temporary total disability, and then, later, in a resultant permanent partial impairment. Under the facts first supposed, there may be two independent claims, one for the temporary total disability, and one for the partial impairment, and these claims, as

to the time of their filing with the Industrial Board, are governed by §24, *supra*. Under the state of facts secondly supposed, there may be the claim, under §24, for the temporary total disability, and thereafter, under §45, for the resultant impairment, as being a "change of condition." In the Hogan case, *supra*, the facts stated did not bring that case within the rule announced in the Denasoff case, nor within the rule as stated in the Mesker case, and the rule laid down in the Hogan case only applies to cases where the impairment is *resultant*, and therefore controlled by §45 as to the time within which such application must be made.

The application for an award of compensation as for permanent partial impairment, filed herein December 9, 1927, was filed within the two years given by §24, and therefore in time.

Affirmed.